456 So.2d 1032 (1984)
Janice Gurtner BAHAM
v.
Hollis Roy BAHAM. (Two cases)
Nos. 84-CA-14, 84-CA-15, C/W 84-CA-359 and C/W 84-CA-360.
Court of Appeal of Louisiana, Fifth Circuit.
August 28, 1984.
*1033 Joel Levy, Levy & Levy, Marrero, for plaintiff-appellant.
Lloyd J. LeBlanc, Jr., George Ann Hayne Graugnard, Accardo, Carville, Edrington, Leblanc & Golden, LaPlace, for defendant-appellee.
Before BOUTALL, CHEHARDY and CURRAULT, JJ.
CURRAULT, Judge.
In this appeal, plaintiff Janice Gurtner Baham challenges the trial court judgment finding her "not without fault" for purposes of permanent alimony after divorce, as well as the judgment award for child support in the amount of Two Hundred Fifty Dollars ($250), plus medical expenses.
Mrs. Baham filed a suit for separation from appellee, Hollis Roy Baham, on September 16, 1981. On January 18, 1982, a consent judgment was entered into giving the custody of two minor children to plaintiff along with child support in the amount of Four Hundred Twenty-Five Dollars ($425) per month. A judgment of separation was never rendered.
On March 4, 1983, appellant filed for divorce on the grounds of living separate and apart in excess of one year, and in connection therewith sought child support, alimony pendente lite and permanent alimony. On April 20, 1983, a consent judgment was entered into awarding Mrs. Baham Two Hundred Dollars ($200) per month alimony pendente lite.
On June 9, 1983, a rule for contempt was filed by plaintiff for failure to pay child support, for arrearages and executory judgment and for revocation of defendant's visitation rights.
On June 17, 1983, all matters were consolidated and transferred to Division "B" of the Twenty-Ninth Judicial District Court and set for trial on September 2, 1983. Prior to trial, one of the children attained her majority.
The judgment of the trial court rendered on October 3, 1983, in pertinent part, granted the divorce on the grounds of having lived separate and apart in excess of one year; awarded plaintiff the custody of the minor child; awarded child support in the amount of Two Hundred Fifty Dollars ($250) per month, plus all medical expenses; found defendant, Mr. Baham, in arrears in the sum of Three Thousand, One Hundred Ninety-Seven Dollars and Fifty Cents ($3,197.50) and made the amount executory; granted reasonable visitation rights to defendant and denied permanent alimony to plaintiff on the basis that she was not free from fault.
Plaintiff thereafter perfected this appeal of the judgment.[1]
Four issues are presented for our review.
(1) Whether the trial court should have revoked defendant's visitation rights as stipulated at trial;
(2) Whether the trial court erred in its determination of the amount of arrearages;
(3) Whether the trial court erred in finding plaintiff at fault and thereby denying her alimony; and
(4) Whether the determination of the amount of child support was in error.
The first two allegations of error are conceded by appellee in brief and supported by the record. Consequently, the trial court judgment is reversed on visitation rights and corrected to reflect the arrearages owed from the sum of Three Thousand, *1034 One Hundred Ninety-Seven Dollars and Fifty Cents ($3,197.50) to the amount of Four Thousand, Two Hundred Eighteen Dollars and Fifty Cents ($4,218.50).
Appellant argues next that the trial court erred in denying permanent alimony in that (1) the trial court determined that mutual incompatibility is a bar to permanent alimony; and (2) that the facts do not support a finding of fault chargeable to the wife.
In her petition for divorce, based on living one year separate and apart (LSA-R.S. 9:301), Mrs. Baham sought permanent alimony as provided in Civil Code Article 160 which states in pertinent part:
"[A] When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income...."
Louisiana law provides that a spouse seeking permanent alimony bears the burden of proving himself or herself free from fault as well as demonstrating insufficient means for support. Moore v. Moore, 393 So.2d 822, 824 (La.App.2d Cir. 1981).
"Fault in this context is conduct violative of the marital duties and responsibilities, and it `must be serious and an independent contributory or proximate cause of the separation.' Pearce v. Pearce, 348 So.2d 75, 77 (La.1977)." Schexnayder v. Schexnayder, 424 So.2d 516, 518 (La. App. 5th Cir.1982).
For purposes of permanent alimony preclusion, the courts have held that fault is synonymous with the fault grounds for separation and divorce. Adams v. Adams, 389 So.2d 381 (La.1980); Jones v. Jones, 442 So.2d 817 (La.App. 4th Cir.1983). A spouse is, however, not deprived of post-divorce alimony simply because she or he is not blameless in the marital discord. Pearce v. Pearce, supra. Mutual incompatibility, as appellant correctly notes, does not constitute grounds for a fault based separation or divorce. Loyd v. Loyd, 336 So.2d 912 (La.App.2d Cir.1976); Jones, supra; Langton v. Langton, 442 So.2d 1308 (La.App.3d Cir.1983).
The trial court judge stated inter alia the following:
"I also deny permanent alimony having found as a matter of fact Janice G. Baham is not free of fault with respect to the burden of proof she is required to carry for an award of alimony. I find that the parties are both guilty of fault sufficient so as to constitute independent grounds for the separation and divorce. Mutual incompatibility prevents an award of alimony."
While we find that the trial court incorrectly stated the law as to mutual incompatibility, we also find that the misstatement is inconsequential in light of the preceeding language which clearly finds appellant's fault an independent ground for separation or divorce.
Alternatively, appellant argues that the evidence does not support a finding of fault. In this regard, it is alleged that as appellee simply denied the allegation of freedom from fault in his answer to the divorce petition without reference to specific instances, an unfair burden was placed on Mrs. Baham to counter unexpected accusations. In support thereof, appellant cites Carter v. Carter, 316 So.2d 829 (La.App. 1st Cir.1975); rehearing denied; writ refused 320 So.2d 913 (La.1975). There the court stated in reference to the wife's burden of proof:
"From its very nature this is a heavy burden to cast upon a pleader and must be imposed within reasonable limitation to avoid injustice. It calls for proof of a negative. This is always difficult and in many cases impossible, especially when the implications calling for disproof are non-specific broad generalities. Unless the wife is informed by the husband's answer to her petition for alimony by some specific allegation of fault on her part, she is put in the impossible position of disproving every conceivable fault which could bring about a separation between married persons. It is contrary to all reason that a wife be required to *1035 come to court prepared to disprove any and every possible accusation which might be levelled against her during the course of the trial." At page 830.
In that case, the husband presented vague inferences of infidelity which the court rejected as evidence of fault.
The Fourth Circuit Court of Appeal discussed the Carter statement in Smith v. Smith, 357 So.2d 93 (La.App. 4th Cir.1978). There the court noted that while it is unnecessary to plead specific instances of fault, the Carter statement
"... raises the question of fairness and consideration of effect of the evidence presented in the discharge of her burden of proof." At page 95. See also Barrios v. Barrios, 342 So.2d 1263 (La.App. 4th Cir.1977).
The evidence herein reveals that Mr. and Mrs. Baham were married in 1964 and two children were born of this marriage. Mr. Baham testified that for the first five years the marriage was severely troubled, but was a good one from 1972 to 1980. Mrs. Baham did not testify in this regard, but the evidence clearly indicated that Mr. Baham had a violent temper and on occasion physically abused his wife. On the day the parties separated (May 28, 1981), the evidence sufficiently discloses that Mr. Baham physically threw Mrs. Baham out of the house and down the stairs. Mr. Baham denied the fact, but admitted he was angry because Mrs. Baham did not come home the previous night. He stated that she telephoned at 7:00 a.m. the next morning to tell him she was at her father's house, but that he in turn told her not to come home. When she returned anyway, he forced her out of the house. The evidence further reflects that Mr. Baham discovered several days later that Mrs. Baham had been "out" the previous evening with a male friend and co-worker. However, there were no allegations of infidelity and this knowledge occurred after the fact of the separation.
Mrs. Baham, on the other hand, admitted that she was out with her male friend, but denied going places with him previously. Her daughter and husband both testified to the contrary. Mrs. Baham also testified that she spent the night at her father's house in order to avoid a confrontation with her husband. Mrs. Baham's father, Ralph Gurtner, however testified on cross-examination that he did not recall seeing his daughter on the night in question.
The evidence further revealed that prior to the separation both parties stayed out late after work on numerous occasions without the other spouse. Mr. Baham indicated that on three or four occasions prior to May 28, 1981, Mrs. Baham left the matrimonial domicile remaining away from the home for a day or two, and once for three days. On those occasions, he claimed she removed some of her clothing which she did not bring back to the domicile. He stated that she told him upon return that she had filed "for divorce and all of this other stuff". Mr. Baham testified that he told her that if she stayed away all night again, the marriage would end. Consequently, on May 27, 1981, he refused to allow Mrs. Baham to return after remaining absent from the home without informing him or the minor children of her whereabouts or informing the family of the reason for her absence. Mrs. Baham was not recalled to the stand to explain or rebut Mr. Baham's testimony on the issue of her prior departures and absences from the home.
While we agree that unexpected accusations can create an unfair burden on the spouse attempting to prove freedom from fault, we cannot agree that such occurred under these facts. Consequently, as the facts of Mrs. Baham's conduct are unrebutted, we cannot say that the trial court was clearly wrong in determining appellant was not free from fault. Pearce, supra.
Finally, appellant argues that the trial court abused its discretion in its award of child support. In the judgment, the court awarded Two Hundred Fifty Dollars ($250) per month plus medical expenses for the support of nine year old Rachel. At the time of trial, the other child reached majority and was self-supporting.
*1036 The alimentary obligations of parents to children as set forth in LSA-C.C. Articles 227, 230 and 231, provide that parents together undertake the duty of supporting, maintaining and educating their minor children. Fouquet v. Fouquet, 442 So.2d 787 (La.App. 5th Cir.1983), rehearing denied 1984. The provision is to be made with consideration both to the needs of the recipient and the circumstances of the provider. Fouquet v. Fouquet, supra. The parent seeking child support bears the burden of proving the needs of the children and the ability of the former spouse to pay. Stepp v. Stepp, 442 So.2d 1327 (La.App. 3d Cir.1983). In consideration of these factors, the jurisprudence also holds, as appellant aptly notes, that children are entitled to support sufficient to maintain them on a basis commensurate with the family standard of living enjoyed before the marriage is terminated, and are entitled to more than a bare subsistence. Mire v. Mire, 251 So.2d 797 (La.App. 1st Cir.1971); Byrd v. Byrd, 335 So.2d 515 (La.App. 1st Cir.1976). However, on review, the appellate court will not disturb an award made by the trial court absent a showing of abuse of his wide discretion. Trinchard v. Trinchard, 446 So.2d 400 (La.App. 5th Cir.1984).
The evidence on the child support issue reveals that Mrs. Baham was, at time of trial, not receiving any income due to a job-related accident at Winn-Dixie. She received worker's compensation benefits for four weeks, after which the payments were discontinued. She stated that she was attempting to recover further benefits as she was still under medical care and unable to return to her employment.
An itemized statement of expenses produced by Mrs. Baham reflects a monthly total of One Thousand, Two Hundred Four Dollars ($1,204), One Hundred Nineteen Dollars ($119) of which is attributable to the school expenses of Rachel. No other breakdown of Rachel's needs was presented to the trial court. As medical expenses for Rachel were ultimately assessed against Mr. Baham without complaint, those items are not under consideration.
Mr. Baham, an employee of Winn-Dixie, listed his weekly gross income as Five Hundred Twenty-Five Dollars ($525), and his net at Three Hundred Fifty-Five Dollars and Ninety-Seven Cents ($355.97). Based on these figures, his total gross income equals Twenty-Seven Thousand, Three Hundred Dollars ($27,300). However, the defendant testified that his gross income for 1982 was "about $34,000 or $32,000, somewhere around in that neighborhood." Mr. Baham also testified that he received bonuses not reflected in his Five Hundred Twenty-Five ($525) gross income figure. He receives an additional bonus check yearly, the largest of which totalled Thirteen Hundred Dollars ($1300) in 1982. The monthly bonus received by Mr. Baham varies from $3 to $300. As a further benefit of his position, his employer provides "Golden Brush points" for selling products. Each point is valued at 50 cents. At time of trial, he acknowledged possessing "3,000 or 4,000 points" the value of which totals Fifteen Hundred to Two Thousand Dollars ($1500 to $2000). The points are received monthly and may be cashed in or used to purchase products from a book. He stated he generally receives 1,000 points or Five Hundred Dollars ($500) worth per month. Aside from the bonuses apparently reflected in his yearly income statements, the point system increases his disposable income monthly from One Thousand, Five Hundred Forty-One Dollars and Thirty-Five Cents ($1541.35) (net based on 355.97 multiplied by 4.33 weeks) to Two Thousand Forty-One Dollars and Thirty-Five Cents ($2,041.35). He provided a list of monthly expenses totalling One Thousand, Two Hundred Twenty-Seven Dollars ($1,227) exclusive of alimentary obligations. In addition, Mr. Baham's assets include at least 100 shares of Winn-Dixie stock; four automobiles, one of which he recently sold to his major daughter, and two of which he stated are immobile; and equity in the home in which he presently resides.
In view of these facts, it is our opinion that the trial court erred in fixing the child support.
*1037 By including tuition in the award of Two Hundred Fifty Dollars ($250), Rachel only receives $131 per month or $32.75 per week for her other needs, excluding medical expenses. Clearly, in view of Mr. Baham's income, this amount is "bare subsistence" and should be increased.
Consequently, we hereby increase the amount of support to Three Hundred Fifty Dollars ($350) per month plus medical expenses.
Therefore, after a review of the law and evidence, we hereby (1) affirm the judgment denying alimony; (2) reverse the judgment to revoke defendant's visitation rights; (3) amend the judgment to increase the arrearages owed by appellant to Four Thousand, Two Hundred Eighteen Dollars and Fifty Cents ($4,218.50); and amend the judgment to increase the award of child support to Three Hundred Fifty Dollars ($350) per month, plus medical expenses.
Each party is to bear its own costs on appeal.
AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.
NOTES
[1] An appeal of a related matter (# 84-CA-359 C/W 84-CA-360) was lodged by defendant subsequent to plaintiff's appeal. The cases were consolidated, however defendant voluntarily abandoned his appeal prior to oral argument.